UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-06-80-B-W |
| | ) | |
| MARK MCCURDY | ) | |

**ORDER DENYING MOTION FOR NEW TRIAL**

After a three-day trial, a jury found Mark McCurdy guilty of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). *Jury Verdict Form* (Docket # 148). Mr. McCurdy moves for a new trial claiming that newly discovered evidence demonstrates two Government witnesses committed perjury when they identified the firearm in court. Pro Se *Mot. for New Trial* (Docket # 155); *Def.'s Revised Mot. for New Trial* (Docket # 163) (*Def.'s Mot.*).[1] Concluding that he failed to demonstrate either that the witnesses' testimony was false or that his claimed evidence is newly discovered, the Court denies the Defendant's motion for new trial.

**I.    STATEMENT OF FACTS**

    **A.    The Indictment and the Evidence**

The Indictment charged Mr. McCurdy with knowingly possessing a "Colt Match H-BAR .223 caliber rifle, bearing serial number CMH037251" on March 27, 2006. *Indictment* (Docket # 1). As part of its case-in-chief, the Government introduced the testimony of Steven Smith, a federally-licensed firearms dealer and proprietor of Smitty's Trading Post in Machias, Maine, and Janelle Hayward, Mr. McCurdy's former girlfriend, regarding Ms. Hayward's purchase of a

---

[1] Mr. McCurdy filed his first motion *pro se* along with a letter explaining that his attorney repeatedly refused to file it, leaving him with "no choice but to proceed without him." *Letter to Clerk of the District Court* (Docket # 157). To avoid hybrid representation, the Court ordered that Mr. McCurdy's counsel inform the Court whether he would adopt the *pro se* motion. *Order* (Docket # 161). Mr. McCurdy's lawyer adopted the *pro se* motion. *Def.'s Notice of Intent to Adopt* Pro Se *Mot. for New Trial* (Docket # 162). Although both motions are technically before the Court, because the Defendant's Revised Motion for New Trial (Docket # 163) effectively incorporates the *Pro Se* Motion for New Trial (Docket # 155), the Court refers to only the Revised Motion in this Order.

firearm from Smitty's on July 14, 2000. The Government also introduced a copy of an ATF Form 4473, signed by Ms. Hayward and Mr. Smith, dated July 14, 2000, documenting Ms. Hayward's purchase from Mr. Smith of a Colt Match Target HBAR .223 caliber rifle bearing serial number CMH037251. Ms. Hayward testified that Mr. McCurdy asked her to purchase the gun for him. Finally, the Government introduced as Government's Exhibit 2 a Colt Match HBAR .223 caliber rifle bearing serial number CMH037251 through the testimony of Deputy Jonathan Rolfe of the Washington County Sheriff's Department. Deputy Rolfe explained that he discovered and seized that firearm from Mr. McCurdy's attic on March 27, 2006.

The Government asked Mr. Smith and Ms. Hayward questions designed to link the firearm Mr. Smith sold to Ms. Hayward on July 14, 2000 to Government Exhibit 2, the firearm Deputy Rolfe found in the Defendant's attic on March 27, 2006. Both witnesses linked Government Exhibit 2 to the sale. Mr. McCurdy asserts that in doing so, Mr. Smith and Ms. Hayward committed perjury and that a new trial is necessary.

### B.    Mr. McCurdy's Motion

Mr. McCurdy's focus is narrow. He points out that the firearm sold in 2000 was substantially different than the firearm found in 2006. The firearm sold in 2000 had—among other things—the following characteristics:

   1) barrel length – 20 inches;
   2) barrel type – HBAR;
   3) caliber – 5.56 mm;
   4) twist 1/7;
   5) fire selector – semiautomatic;
   6) buttstock – fixed;
   7) bayonet lug – no; and,
   8) compensator – no.

*Aff. of James Taylor* at 2 (Docket # 184).[2] Mr. McCurdy also says that the firearm presented in Court had—among other things—the following characteristics:

1) barrel length – 16 inches;
2) collapsible stock; and,
3) a flash suppressor.

*Def.'s Mot.* ¶ 10. Quoting the now repealed federal definition of a semiautomatic assault rifle, Mr. McCurdy alleges that these characteristics—collapsible stock and flash suppressor—would have made the firearm illegal to sell in 2000, because of the then-existing ban against the sale of assault weapons. *Id.* ¶¶ 7-10 (quoting 18 U.S.C. § 921(30)).[3]

Putting all of this together after trial, Mr. McCurdy posits that Mr. Smith, a federally-licensed firearms dealer, would not have sold a firearm that was illegal in 2000. Thus, when presented at trial with a firearm that was obviously distinct from the firearm he sold, he must have been lying when he told the jury that it was the same firearm. Mr. McCurdy makes the same point about Ms. Hayward's identification testimony. He then draws the ultimate conclusion that he is entitled to a new trial, since the verdict must have been based on the

---

[2] Following Mr. McCurdy's motion, the Court ordered him to produce an affidavit from a representative of Colt's Manufacturing Company LLC to support some of his factual allegations. *Preliminary Order on Mot. for New Trial* (Docket # 172). Mr. McCurdy filed an affidavit from James Taylor of Colt's on June 26, 2009. *Aff. of James Taylor* (Docket # 184). The substance of the Taylor affidavit is set forth above. The affidavit helped clarify what Mr. McCurdy is and is not contending, and on July 1, 2009, the Court held a conference of counsel to confirm that its understanding of Mr. McCurdy's contentions was correct.

Mr. McCurdy is not saying that the firearm was altered between the point of manufacture and the point of sale in such a way that it would have been illegal to sell on July 14, 2000. Instead, he is saying that when presented with a firearm with characteristics that would have made it illegal to sell in 2000, Mr. Smith could not have truthfully identified the altered firearm at trial as being the same firearm he sold in 2000.

[3] Section 110102(a) of Title XI of the Violent Crime Control and Law Enforcement Act of 1994, commonly referred to as the semiautomatic assault weapons ban, made it "unlawful for a person to manufacture, transfer, or possess a semiautomatic assault weapon." 18 U.S.C. § 922(v)(1). Section 110102(b) of the Act classified as a "semiautomatic assault weapon" a semi-automatic rifle that has the ability to accept a detachable magazine and at least two of five enumerated accessories, including "a folding or telescoping stock" and "a flash suppressor or threaded barrel designed to accommodate a flash suppresser." *Id.* § 921(a)(30)(B); *see Olympic Arms v. Buckles*, 301 F.3d 384, 385-87 (6th Cir. 2002). The semiautomatic assault weapons ban expired on September 13, 2004, and "§ 922(v)'s prohibition against possession and § 921's definition of a semiautomatic assault weapon were repealed as of that date." *United States v. Myers*, 553 F.3d 328, 329-330 (4th Cir. 2009) (citing Pub. L. No. 103-322, § 110105, 108 Stat. 1796, 2000 (1994) ("This subtitle and the amendments made by this subtitle (1) shall take effect on the date of the enactment of this Act; and, (2) are repealed effective as of the date that is 10 years after that date")).

perjured testimony of two critical Government witnesses. In fact, he goes so far as to accuse the prosecutor of coaching or coercing this false testimony. *Id.* ¶ 12.

Characterizing his motion as one based on "newly discovered evidence," Mr. McCurdy argues that "he could not have in due diligence predicted that either witness Smith or Hayward" would have testified in this manner, and that their "surprise testimony" was such that he was unable to introduce at trial the argument and factual allegations he marshals in his motion for new trial. *Id.* ¶ 13. Mr. McCurdy concludes by saying that once it is recognized that Ms. Hayward must have lied because Mr. Smith never would have sold her Government Exhibit 2, an illegal firearm under then-existing law, the interests of justice require a new trial because "[t]he only basis upon which the jury could have convicted the Defendant is premised on Hayward's testimony that the Defendant took possession of Government's Exhibit #2." *Id.* ¶ 14.

### C. The Government's Response

As a general matter, the Government disagrees with Mr. McCurdy's recollection that Ms. Hayward and Mr. Smith testified that Government Exhibit 2 was definitely the subject of the July 14, 2000 transaction between them. The Government recalls that both witnesses "testified that Government Exhibit 2 *looked like* the firearm that was the subject of the July 14, 2000 transaction, but neither positively and unequivocally identified it as such." *Gov't's Resp. to Def.'s Revised Mot. for New Trial* at 3 (Docket # 166) (*Gov't's Resp.*).

Citing the legal standard for a motion for new trial based on newly discovered evidence, the Government attempts to rebut Mr. McCurdy's claim of surprise by alleging that "well in advance of trial" he was provided with reports detailing statements by both witnesses regarding the July 14, 2000 transaction. The Government also argues that the "newly discovered evidence" is not material to the extent the jury could have convicted Mr. McCurdy without accepting the

testimony of Mr. Smith and Ms. Hayward concerning the appearance of Government's Exhibit 2. Finally, the Government contends that an acquittal on retrial would be unlikely, and concludes that because Mr. McCurdy's motion does not satisfy the legal standard, the Court should deny it as untimely.

## II.    DISCUSSION

### A.    The Legal Standard

Federal Rule of Criminal Procedure 33(a) provides, in part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). On the other hand, there are "definite limits upon a district court's right to upset a jury verdict." *Id.* at 322. The First Circuit has explained that the "remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996) (quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979)). The standards for a Rule 33 motion are rigorous, and "a trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result." *Rothrock*, 806 F.2d at 322.

To succeed on a motion for new trial based on newly discovered evidence, the defendant must demonstrate:

> (i) the evidence upon which the defendant relies was unknown or unavailable to him at the time of trial; (ii) the failure to bring the evidence forward at trial was not occasioned by a lack of diligence on the defendant's part; (iii) the evidence is material (as opposed to being merely cumulative or impeaching); and (iv) the evidence is such that its introduction would probably result in an acquittal upon a retrial of the case.

5

*United States v. Maldonado-Rivera*, 489 F.3d 60, 66 (1st Cir. 2007); *see United States v. Sepulveda*, 15 F.3d 1216, 1220 (1st Cir. 1993) (clarifying that the evidence "must create an actual probability that an acquittal would have resulted if the evidence had been available"). This same four-prong test applies "where a new trial motion is premised upon alleged new evidence that a conviction was obtained by perjured testimony when the government's use of that testimony was unwitting." *United States v. Gonzalez-Gonzalez*, 258 F.3d 16, 21 (1st Cir. 2001); *United States v. Huddleston*, 194 F.3d 214, 221 (1st Cir. 1999). However, where it is alleged that "the government knowingly used perjured testimony to obtain a defendant's conviction," a different fourth prong applies. *Gonzalez-Gonzalez*, 258 F.3d at 22. In that case, the defendant must show only a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.*; *see United States v. Hall*, 434 F. Supp. 2d 19, 21 (D. Me. 2006).

"Perjury consists of false testimony under oath concerning a matter material to the proceeding, as long as the testimony is given 'with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Shinderman*, 515 F.3d 5, 19 (1st Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)); *see United States v. Tavares*, 93 F.3d 10, 14 (1st Cir. 1996) (applying this definition to a defendant's claim, raised on direct appeal of his conviction, that the Government knew or should have known that one of its witnesses committed perjury). Importantly, a defendant's failure to establish perjury renders unnecessary a determination that the Government's conduct was knowing, *United States v. Josleyn*, 206 F.3d 144, 155 n.11 (1st Cir. 2000), and the defendant is left to demonstrate that all four prongs of *Maldonado-Rivera* are met.

      **B.**    **The Evidence Does Not Establish the Allegation of Perjury**

### 1. The Testimony of Steven Smith

For "thirty-five years," Stephen Smith has been "a federal firearms licensed dealer" running his "own business" in Machias, Maine called "Smitty's Trading Post". *Tr.* 5:6-8 (Docket # 173). Mr. Smith sells "firearms, and related items, ammunition, scopes, that type of thing." *Id.* 5:17-18. He grew up with Janelle Hayward in the small town of Machias and similarly has known Mark McCurdy. *Id.* 5:19-25; 6:1-2. On July 14, 2000, Ms. Hayward and Mr. McCurdy came into his store and Ms. Hayward ended up buying a "Colt H BAR AR-15 223 known as a 5.56 millimeter" firearm. *Id.* 6:9-19. After reviewing the paperwork associated with the sale to Ms. Hayward, Mr. Smith testified that the serial number for the firearm was CMH037251. *Id.* 12:9-17. When shown the firearm marked as Government Exhibit 2, which was later admitted into evidence and identified as the firearm found in Mr. McCurdy's attic, Mr. Smith testified that he recognized the firearm as being "the firearm I sold in July 2000." *Id.* 29:4-11. He was not confronted on cross-examination with differences between the firearm sold and the firearm admitted into evidence.

The Court readily concludes that the evidence does not establish that Mr. Smith's testimony was false or even inaccurate. The obvious common denominator between the firearm sold in 2000 and the firearm found in 2006 is the serial number. Mr. Smith could well have compared the serial number in the paperwork (with respect to which he testified before inspecting the firearm) with the serial number on the firearm in the courtroom and logically and truthfully testified that the firearm in court was the firearm he sold. Mr. McCurdy's motion is founded on the erroneous premise that if some characteristics of a firearm are altered after purchase, the seller is prevented from later identifying it as the same one he sold by reference to the serial number alone.

### 2. The Testimony of Janelle Hayward

Ms. Hayward, the gun purchaser, was also generally asked if she could identify the firearm in the courtroom as the firearm she purchased. Specifically, she was asked whether the firearm "appears to be the style of weapon that you purchased." *Id.* 43:13-15. She was equivocal: "I believe so. I know it was military." *Id.* 43:16. Contrary to Mr. McCurdy's claims, Ms. Hayward did not positively identify the courtroom firearm as the same firearm she purchased. Thus, Mr. McCurdy's contentions about Ms. Hayward's testimony are unsupported by the evidence at trial.

### 3. Conclusion

The Court firmly rejects Mr. McCurdy's contention that Mr. Smith and Ms. Hayward committed perjury when they made in-court identifications of the firearm in this case. Neither Mr. Smith's nor Ms. Hayward's testimony even remotely suggests that they were lying. The factual predicate for the motion is simply not present.

## C. The Evidence was Known and Available to Mr. McCurdy at Trial

Mr. McCurdy's motion also fails because he has not demonstrated that the differences between the firearm as sold and as found in his attic were newly discovered. Under the first prong of *Maldonado-Rivera*, Mr. McCurdy must show that the evidence he relies upon "was unknown or unavailable to him at the time of trial." *Maldonado-Rivera*, 489 F.3d at 66. Mr. McCurdy asserts that "he could not have in due diligence predicted" that Mr. Smith and Ms. Hayward would have testified that Government Exhibit # 2 was the subject of the July 14, 2000 transaction between them, given that it was allegedly illegal to transfer or posses Government Exhibit # 2 under then-applicable federal law. *Def.'s Mot.* ¶ 13. He says—but does not explain how—this "surprise testimony" rendered him unable to "counter" it with his present arguments

regarding the applicability of the assault weapons ban to that transaction. *Id.* His position is untenable.

On November 21, 2008—roughly five weeks before trial—the Government moved *in limine* for a ruling on the admissibility of Ms. Hayward's and Mr. Smith's testimony. *Gov't's Mot. In Limine re: Testimony of Janelle Hayward and Stephen Smith* (Docket # 116). The Government represented that Mr. Smith "will testify that Ms. Hayward purchased a Colt Match H-BAR .223 caliber rifle, bearing serial number CMH037251," and that Ms. Hayward completed an ATF Form 4473 in connection with the purchase. *Id.* at 2. The Government further represented that Ms. Hayward "will testify . . . that she in fact purchased the Colt Match H-BAR .223 caliber rifle at Smitty's Trading Post," and that Mr. McCurdy financed the purchase, which was his idea. *Id.*

On December 15, 2008, Mr. McCurdy responded to the Government's motion. *Def.'s Resp. to Gov't's Mot. In Limine re: Testimony of Janelle Hayward and Stephen Smith* (Docket # 136) (*Def.'s Resp. to Gov't's Mot. In Limine*). He argued that Ms. Hayward's and Mr. Smith's testimony was unfairly prejudicial and too remote to be relevant. *Id.* at 3. While doing so, he summarized the Government's proffer regarding that testimony.[4] He stated that "Janelle Hayward would testify that in or around July 2000 she and the Defendant went to a local firearms dealer and she purchased the firearm in question." *Id.* at 1. He further explained that "[t]he Government would also offer the testimony of the firearm dealer, Stephen Smith, regarding the circumstances of the purchase." *Id.*

---

[4] Elsewhere, Mr. McCurdy acknowledged that he did not dispute "that law enforcement officers . . . searched his attic and discovered *the weapon at issue*" or that "*the weapon at issue* was located within the Defendant's attic at the time of the search on March 27, 2006." *Def.'s Resp. to Gov't's Mot. In Limine* at 2 (emphasis added). Given that the Government made explicit reference in its motion *in limine* to a "Colt Match H-BAR .223 caliber rifle, bearing serial number CMH037251," there can be no doubt that, in Mr. McCurdy's words, *the weapon at issue* is the one the Government described.

9

The Court granted the Government's motion on December 23, 2008. *Order on Government's Mot.* In Limine *re: Testimony of Janelle Hayward and Stephen Smith* (Docket # 139). Accordingly, contrary to his present claims, Mr. McCurdy could have—indeed should have—predicted that Ms. Hayward and Mr. Smith would testify as the Government promised and he understood. Further, Mr. McCurdy nowhere alleges that he lacked an opportunity to inspect Government's Exhibit 2 before trial. If it had occurred to him to evaluate whether Government's Exhibit 2 had a flash suppressor and a collapsible stock that would have rendered the firearm unlawful to transfer under federal law in force as of July 14, 2000, he could have done so. Similarly, if he had sought to introduce trial testimony on this issue from a representative of Colt or someone else, he could have done so.

This is another way of saying that because he had available at the time of trial the necessary facts and law to make his current claim that Ms. Hayward and Mr. Smith committed perjury, Mr. McCurdy's motion is not based on newly discovered evidence. Newly discovered evidence does not include new legal theories, *United States v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991), and a defense "[b]elatedly pursued is not newly discovered," *United States v. Molovinsky*, 688 F.2d 243, 248 (4th Cir. 1982). *Cf. United States v. Mojica-Rivera*, 435 F.3d 28, 32 (1st Cir. 2006) (rejecting a claim that ineffective assistance of counsel is newly discovered evidence because the facts giving rise to the claim were available at trial); *United States v. Lema*, 909 F.2d 561, 565-66 (1st Cir. 1990) (observing that a defendant's post-trial appreciation of the legal significance of information known at trial does not amount to newly discovered evidence); 3 Charles Alan Wright, *Federal Practice and Procedure: Criminal* § 557, at 337 (2d ed. 1982) (noting that newly discovered evidence "does not include the discovery of a new issue of law"). Not based on newly discovered evidence and filed more than seven days after the jury's verdict,

Mr. McCurdy's motion is untimely. Fed. R. Crim. P. 33(b)(2); *United States v. Diaz*, 300 F.3d 66, 78 (1st Cir. 2002); *United States v. Alexander*, No. CR-04-64-B-W, 2006 U.S. Dist. LEXIS 29194, at *6 (D. Me. May 4, 2006).

### III.   CONCLUSION

Because the Court has determined that Mr. McCurdy has not sustained his burden to demonstrate either that the witnesses' testimony was false or that his motion is based on newly discovered evidence, the Court DENIES *Pro Se* Motion for New Trial (Docket # 155) and Defendant's Revised Motion for New Trial (Docket # 163).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of July, 2009