UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06-cr-00080-JAW |
| | ) | |
| MARK MCCURDY | ) | |

**ORDER DENYING MOTION TO APPEND AND CORRECT THE RECORD**

More than six years after his sentencing hearing, Mark McCurdy moves the Court to make factual findings about matters he contends are contained in his Presentence Investigation Report and are inaccurate. The Court denies the motion because it made the findings Mr. McCurdy contends it should have made, because Mr. McCurdy waived the right to the relief he has requested, because the Court is without jurisdiction to hear his motion, and because the Court was not required to make the findings in the first place.

**I.    BACKGROUND**

On October 16, 2015, Mark McCurdy filed a motion to append and correct the record in this case. *Pet'r's Mot. to Append and Correct the R.* (ECF No. 357) (*Def.'s Mot.*); *Def.'s Mot.* Attach. 1 *Court Determinations on Pet'r's Objections to PSR* (ECF No. 357) (*Def.'s Factual Objections*). On October 27, 2015, the Government objected. *Gov't's Opp'n to 'Pet'r's Mot. to Append and Correct the R.'* (ECF No. 358) (*Gov't's Opp'n*). On November 9, 2015, Mr. McCurdy replied. *Pet'r's Reply to Gov't's Opp'n to Mot. to Append and Correct the R.* (ECF No. 361) (*Def.'s Reply*).

When Mark McCurdy was twenty-five, he committed four violent felonies in the space of about two weeks, burglarizing two pharmacies and robbing two other pharmacies at gunpoint. *Revised Presentence Investigation Report* ¶¶ 31-32 (*PSR*). From at least April 14, 1984, when he was sentenced for the first two burglaries, Mr. McCurdy has been prohibited as a matter of federal law from possessing a firearm. *See* 18 U.S.C. § 922(g)(1). The same prohibition is a matter of state law, and on December 30, 1994, Mr. McCurdy was convicted in Hancock County Superior Court for the state of Maine of being a felon in possession of a firearm. *PSR* ¶ 34.

On November 15, 2006, a federal grand jury indicted Mr. McCurdy for possessing a firearm on March 26, 2006 after having been convicted of a felony, an alleged violation of 18 U.S.C. § 922(g)(1). *Indictment* (ECF No. 1). On October 9, 2007, Mr. McCurdy pleaded guilty to the charge. *Min. Entry* (ECF No. 57). However, at the Rule 11 proceeding, the Court had informed Mr. McCurdy that the maximum period of incarceration was ten years, and after the PSR was completed, it was discovered that because of his prior criminal history, he was subject to the enhanced penalties of the Armed Career Criminal Act. *Order Granting Mot. to Withdraw Guilty Plea* (ECF No. 74). The Court allowed Mr. McCurdy to withdraw his guilty plea. *Id.*

The Court held a three-day jury trial beginning December 29, 2009. *Min. Entries* (ECF Nos. 144, 146, 147). On December 31, 2008, a jury found Mr. McCurdy guilty. *Jury Verdict* (ECF No. 148). On July 20, 2009, the Court sentenced Mr. McCurdy to 210 months incarceration, the bottom of the United States Sentencing Commission Guideline range. *J.* (ECF No. 195); *Tr. of Proceedings* 38:14-39:6 (ECF

No. 208) (*Sentencing Hr'g*). Mr. McCurdy has never accepted either the verdict or the sentence, and ever since July 20, 2009, he has set about a determined course of contention, objecting to matters large and small.

## II.   THE POSITIONS OF THE PARTIES

### A.   Mark McCurdy's Motion

The focus of this motion is some of the contents of the PSR that Mr. McCurdy contends are erroneous and are now having an adverse impact on his time in prison. *Def.'s Factual Objections* at 1-3. Specifically, Mr. McCurdy objects to the statements in the PSR (1) that he violated bail conditions, (2) that he was using opiate-based medications, amphetamines, marijuana, and alcohol illegally up to and including November 2007, and (3) that he failed a drug treatment program in 1979. *Id.*

Mr. McCurdy states that the Bureau of Prisons (BOP) is using these statements in the PSR to deny him "programs." *Id.* Citing *United States v. Cruz*, 981 F.2d 613, 619 (1st Cir. 1992); *United States v. Geer*, 923 F.2d 892, 897 (1st Cir. 1991); and *United States v. Jimenez-Rivera*, 842 F.2d 545, 551 (1st Cir. 1988), Mr. McCurdy says that Rule 32(i)(3)(C) requires the sentencing court to make determinations about disputed facts in the PSR and to attach a copy of those determinations to the PSR. *Def.'s Mot.* at 2. He contends that this Court erred in failing to make mandatory Rule 32 determinations. *Id.*

### B.   The Government's Opposition

The Government opposes Mr. McCurdy's motion. *Gov't's Opp'n* at 1-5. First, the Government says that in 2002, the Criminal Rules Advisory Committee clarified

3

that Rule 32 does not require a sentencing court to resolve all factual disputes with the PSR. *Id.* at 2-3 (quoting FED. R. CRIM. P. 32 advisory committee note to 2002 amendments).

Next, the Government says that, contrary to Mr. McCurdy's assertions, the PSR did not claim that Mr. McCurdy violated bail conditions; that the Court never found Mr. McCurdy had used opiate-based medications, amphetamines, marijuana, and alcohol illegally up to and including November 2007; and that the Court never found that he had failed a drug treatment program in 1997. *Id.* at 3-4.

### C. Mark McCurdy's Reply

Mr. McCurdy replied to the Government's opposition. First, he maintains that the BOP "utilizes the PSR for all its classification decisions." *Def.'s Reply* at 1 (citing *United States v. Caparotta*, No. 1:10-cr-00147-JAW, 2011 U.S. Dist. LEXIS 32522, *7 (D. Me. Mar. 28, 2011)). He argues that the "Government's suggestion that Petitioner provide the BOP with his sentencing transcripts to prove that allegations in his PSR are in error is misguided." *Id.* at 1-2. Mr. McCurdy then presents a synopsis of conversations he has had with a Mr. Kee of the BOP in which Mr. Kee insists that the PSR's factual recitations (to which Mr. McCurdy objected) are accurate. *Id.* at 2-3.

## III. DISCUSSION

### A. The Facts

As a preliminary matter, the Court is struck by the inaccuracy of Mr. McCurdy's underlying contention: that the Court failed to make findings concerning

4

his factual disputes.  As a matter of practice, at the outset of a sentencing hearing, the Court reviews the contents of the PSR with the defendant.  The Court did so in painstaking detail in Mr. McCurdy's case.  *Sentencing Hr'g* at 3:17-17:19.  As the Court went through the contents of the PSR with Mr. McCurdy and his counsel, if Mr. McCurdy informed the Court that the statement was inaccurate, the Court generally accepted his contention.  The Court's actual ruling on those objections is reflected in the Court's recitation of the facts at the end of the sentencing hearing.

To present an easy example, during the colloquy, Mr. McCurdy corrected his age.  Between the last revision of the PSR and the sentencing hearing, he had turned 52, and during the colloquy about the PSR, Mr. McCurdy informed the Court that he was 52, not 51.  *Id.* 5:1-11.  The Court thanked Mr. McCurdy for this clarification and during its recitation of the facts at the end of the hearing, the Court noted: "Turning to the history and characteristics of the defendant, the defendant is a 52-year-old man living in Whiting in Washington County."  *Id.* 64:23-25.  This was a factual finding based on Mr. McCurdy's correction.

Contrary to the premise of Mr. McCurdy's motion, during the sentencing hearing, the Court heard factual objections to the contents of the PSR and ruled in favor of Mr. McCurdy on each objection.  The favorable rulings are found by comparing the initial colloquy at the beginning of the sentencing hearing with the Court's summary of the facts toward the end of the hearing.  In reviewing Mr. McCurdy's current objections, with the exception of the bail violation issue, the sentencing transcript reveals that the Court ruled on his factual objections at the

5

sentencing hearing. The Court did not rule on the bail violation issue, because Mr. McCurdy did not raise it at the sentencing hearing, and, in any event, his contention that the PSR states that he violated his bail conditions is simply incorrect.

### 1.    The PSR and Defendant's Violation of Bail Conditions

Mr. McCurdy claims that the "PSR stated that Petitioner violated bail conditions." *Def.'s Factual Objections* at 1. He is wrong.

Mr. McCurdy does not cite a specific paragraph in the PSR where he contends this statement appears. *Id.* The Court reviewed the PSR and found one reference to bail conditions:

> On May 20, 2008, a Petition to Revoke pretrial release was filed and an arrest warrant issued. The Government alleged that the defendant violated conditions of release by failing to report by telephone as directed and leaving the State of Maine without permission. On June 24, 2008, the defendant was arrested, and on June 26, 2008, he appeared before Chief Judge Woodcock at which time conditions of release were amended to include 1) $10,000 cash bond; 2) No contact with Donald Fletcher; 3) No association with felons; and 4) Home confinement with electronic monitoring.

*PSR* ¶ 1. The docket reveals that the Government initiated a petition for revocation on May 20, 2008. *Mot. for the Issuance of an Arrest Warrant, for Revocation of Order Setting Conditions of Release, for an Order Directing the Def.'s Pretrial Detention and to Seal* (ECF No. 75). After Mr. McCurdy was arrested on June 24, 2008, he made his initial appearance before the Court on June 25, 2008, and the docket indicates that "Counsel will notify the court tomorrow regarding conditions for release pending hearing on the motion for revocation of pretrial release." *Min. Entry* (ECF No. 81). On June 26, 2008, the Court held a bail hearing and released Mr. McCurdy with the

additional conditions set forth in paragraph one of the PSR. *Min. Entry* (ECF No. 82); *Am. Order Setting Conditions of Release* (ECF No. 84). On June 26, 2008, the Government orally withdrew its motion to revoke bail. *Oral Withdrawal of Mot.* (ECF No. 86).

In his motion, Mr. McCurdy cites a colloquy between the Court and AUSA Casey after the jury verdict on December 31, 2008 in which Mr. Casey represented to the Court that there had been no bail violations, and the Court released Mr. McCurdy with the same bail conditions earlier imposed. *Def.'s Factual Objections* at 1-2 (quoting *Tr. of Proceedings III* 86:22-87:8 (ECF No. 211) (*Trial Tr. III*)). Mr. McCurdy's citation of this colloquy is consistent with the Court's conclusion that there never was a judicial determination that he violated his pretrial bail conditions and that the PSR never claims there was.

In short, on this point, Mr. McCurdy is factually incorrect. The PSR does not state that he violated bail conditions. It states that the Government moved to revoke his bail and that he was arrested and released with amended conditions. The docket confirms that, consistent with the contents of the PSR, the Court never made a finding that he violated his bail conditions, and in fact, the Government withdrew the bail revocation petition. His assertion to the contrary is in error.

### 2.     The Defendant's Drug Use

Mr. McCurdy objects to paragraph 50 of the PSR, which states: "The defendant advised, and family members confirmed, that he has struggled with substance abuse for several years. Beginning in the mid-to-late 1970s, he was using Methadone, other

7

opiate-based medications, amphetamines, marijuana and alcohol. This substance abuse continued until November 2007." *PSR* ¶ 50. Mr. McCurdy says that "[t]his is simply not true and Petitioner objected to this allegation." *Def.'s Factual Objections* at 2.

Mr. McCurdy is correct that he raised this objection at the sentencing hearing. The relevant colloquy reads:

> MR. SILVERSTEIN: Yes, and the second-to-last sentence states, this substance abuse continued until November 2007, and Mr. McCurdy's position is that he was prescribed narcotic painkillers since his ankle injury in '93 - - is that correct - - and does not deny using those up until, at the very least, the time of his arrest here, but the suggestion that he was using other opiate-based medications, amphetamines, marijuana, and alcohol through November 2007 is denied and objected to.
> THE COURT: So his contention is that he used a prescriptive medication until November 2007?
> THE DEFENDANT: Yes.
> THE COURT: All right.

*Sentencing Hr'g* 13:19-14:6.

Just before issuing its sentence, the Court reviewed the 18 U.S.C. § 3553(a) factors, including his history and characteristics. In addressing its findings regarding his substance abuse history, the Court stated:

> The defendant has a significant history of substance abuse. There is an indication that his substance abuse began as early as 13 years old. He has - - he had a significant snowmobile accident when he - - in 1971 when he was 13, and he was prescribed Darvon for pain. From the mid-1970s, he began using methadone, amphetamines, marijuana, and alcohol. In 1979, he completed a detoxification program in Portland, but after that began using morphine and Dilaudid. From 1980 to 1982, he was prescribed methadone. At the University of Maine, he was using methadone illegally and barbiturates. He underwent residential treatment in Hampstead, New Hampshire, in 1983 and continued with outpatient treatment in Machias in 1984. In 1994, he crushed his ankle

>   in a motor vehicle accident, and from 1994 to November 2007, he was
>   prescribed methadone and oxycodone for pain.

*Id.* 65:16-66:8.  Comparing the Court's recitation of the facts with Mr. Silverstein's objection to the PSR, it is apparent that the Court did not adopt the PSR's statement that Mr. McCurdy was using other opiate-based medications, amphetamines, marijuana, and alcohol through November 2007.  Instead, the Court accepted Mr. McCurdy's statement of the drugs he was using from 1993 to November 2007 and incorporated his version into its sentencing findings.  Again, Mr. McCurdy is factually incorrect.

### 3. The Defendant's Failing a Drug Treatment Program in 1979

In his motion, Mr. McCurdy says that the PSR stated that he "failed a drug treatment program in 1979."  *Def.'s Factual Objections* at 2.  In paragraph 51 of the PSR, the following appears: "In 1979, he attempted and failed a detox program at the Portland, Maine, Medical Center."  *PSR* ¶ 51.  The PSR also states in paragraph 51: "From 1980 to 1982, he was prescribed Methadone in Lubec, Maine, but once off the maintenance program, he resumed opiate-medication use within one month."  *Id.*  Mr. McCurdy says that he not only completed the drug treatment program in 1979 but continued with aftercare by Dr. McBride in Lubec, Maine.  *Def.'s Factual Objections* at 2-3.

Mr. McCurdy is correct that he objected to the PSR's assertion that he failed the 1979 detoxification program at his sentencing hearing.  *Sentencing Hr'g* 14:7-18 ("THE DEFENDANT: I completed the detox program in Portland").  Again, however,

9

the Court accepted Mr. McCurdy's factual objection. During its recitation of his substance abuse history, the Court expressly stated that "[i]n 1979, he completed a detoxification program in Portland . . . ." *Id.* 65:24-25.

His objection to the PSR's reference to the interval between 1980 and 1982, when he was receiving methadone from Dr. McBride of Lubec, was that "there was no specific maintenance program that was run or sponsored or administered, but that his doctor had prescribed him methadone . . . ." *Sentencing Hr'g* 14:24-15:1. Mr. McCurdy's counsel indicated that he had no objection to a reference to the methadone program so long as it referred to a doctor's prescription, which was discontinued. *Id.* 15:1-3. Once again, in its recitation of findings, the Court stated: "From 1980 to 1982, he was prescribed methadone." *Id.* 66:1-2. The Court therefore made the findings that Mr. McCurdy complains were not made. Mr. McCurdy is simply factually incorrect.

## IV. DISCUSSION

### A. Waiver

Although not raised by the parties, there is a question as to whether Mr. McCurdy waived the right to request that the Court revise the PSR. If a defendant fails to alert the sentencing court that it failed to adequately address his objections to the PSR, the defendant has waived the issue. *United States v. Wagner-Dano*, 679 F.3d 83, 94 (2d Cir. 2012) ("Wagner-Dano waived her Rule 32(i)(3) argument by failing to alert the district court of her procedural objection that the court had not adequately addressed her disagreements with the PSR"). Here, Mr. McCurdy

objected to certain portions of the PSR, and the Court made findings. *See generally Sentencing Hr'g*. The Court made findings in response to his objections, and at the sentencing hearing, Mr. McCurdy never alerted the Court that he considered the Court's findings to be inadequate or insufficient. Now, more than nine years after the sentencing hearing, Mr. McCurdy returns and asks the Court to do what he did not ask the Court to do in 2006. He has long since waived these factual issues.

B.  **Jurisdiction**

Furthermore, the Court does not have jurisdiction to address Mr. McCurdy's recently filed Rule 32 objections to the PSR. The First Circuit has plainly held that "Rule 32, 'standing alone, does not provide the district court with jurisdiction to hear a motion making a post-judgment collateral attack on one's sentence for a Rule 32 violation.'" *United States v. MacPherson*, No. 91-2019, 1992 U.S. App. LEXIS 28765, *7 (1st Cir. Apr. 7, 1992) (quoting *United States v. Fisher*, 821 F.2d 557, 558 (11th Cir. 1987) (per curiam)). In other words, "Criminal Rule 32 provides no independent foundation for a postsentence motion to correct a PSI Report . . . ." *United States v. Angiulo*, 57 F.3d 38, 41 (1st Cir. 1995). "A defendant who wants to mount a post-sentencing challenge to an alleged violation of Rule 32(c)(3)(D) must do so either in his direct appeal (which [defendant] did not do here) or by way of a timely Rule 35 motion."[1] *MacPherson*, 1992 U.S. App. LEXIS 28765 at *7. Here, Mr. McCurdy failed to raise these issues on direct appeal and has not filed a timely Rule 35 motion,

---

[1] The citation to Rule 32(c)(3)(D) is to a provision now eliminated from the Rule. Nevertheless, the principle that Rule 32 is not available as a vehicle to challenge the contents of a presentence report long after sentencing remains valid.

11

raising these issues and the Court does not have jurisdiction to hear his current motion.

### C. Rule 32(i)(3)(C)

Rule 32(i)(3)(C) reads: "At sentencing, the court must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons." FED. R. CRIM. P. 32(i)(3)(C).[2] In 2002, the advisory committee on the Rules of Criminal Procedure clarified Rule 32(i)(3):

> Revised Rule 32(i)(3) addresses changes to current Rule 32(c)(1). Under the current rule, the court is required to "rule on any unresolved objections to the presentence report." The rule does not specify, however, whether that provision should be read literally to mean every objection that might have been made to the report or only on those objections that might in some way actually affect the sentence. The Committee believed that a broad reading of the current rule might place an unreasonable burden on the court without providing any real benefit to the sentencing process. Revised Rule 32(i)(3) narrows the requirement for court findings to those instances when an objection addresses a "controverted matter." If the objection satisfies that criterion, the court must either make a finding on the objection or decide that a finding is not required because the matter will not affect sentencing or that the matter will not be considered at all in sentencing.

FED. R. CRIM. P. 32, advisory committee note to 2002 amendments. The advisory committee also addressed those factual disputes that might affect service of the sentence:

> To avoid unduly burdening the court, the Committee elected not to require resolution of objections that go only to the service of the sentence. However, because of the presentence report's critical role in post-sentencing administration, counsel may wish to point out to the court those matters that are typically considered by the [BOP] in designating the place of confinement. For example, the [BOP] considers: "the type of offense, the length of the sentence, the defendant's age, the

---

[2] As authority for his motion, Mr. McCurdy also relies on Rule 36, which addresses clerical error. *Def.'s Mot.* at 1 (citing FED. R. CRIM. P. 36). There is no evidence of a clerical error in this record.

12

>   defendant's release residence, the need for medical or other special treatment, and any placement recommendations made by the court." Further, a question as to whether or not the defendant has a "drug problem" could have an impact on whether the defendant would be eligible for prison drug abuse treatment programs.

*Id.* (citations omitted).

Mr. McCurdy's citation of three First Circuit cases about the mandatory nature of sentencing court findings all predate the 2002 amendments to Rule 32, and thus, they have been superseded by rule. As described by the advisory committee, there are two reasons that a sentencing court could resolve factual disputes: first, if the issue is relevant to the sentence; second, if the issue is relevant to the service of the sentence. The Court resolved these factual issues only to the extent that they were relevant to Mr. McCurdy's sentence.[3] At the sentencing hearing, Mr. McCurdy never contended that the disputed matters had any relevance to the service of his sentence. In any event, as the Court has described, the Court made the sentencing findings that Mr. McCurdy claims it should have made.

---

[3] Reviewing these factual objections, none of Mr. McCurdy's factual objections had any significant bearing on the Court's sentence. The Court was itself aware whether Mr. McCurdy had violated his bail conditions because it presided over the revocation hearing, released him on additional conditions, and received the Government's withdrawal of the petition for revocation. Whether Mr. McCurdy successfully completed a drug treatment program in 1979 had no influence on the Court's sentence thirty years later in 2009. Whether he was in a formal or informal methadone program between 1980 and 1982 was of no moment. His exact drug use leading up to November 2007 did not matter, because the Court concluded that Mr. McCurdy's problems in life had been largely caused by his abuse of drugs. *Sentencing Hr'g* 70:3-7 ("First, a lot of the troubles in your life seem to be related to substance abuse, and it seems that you finally, I think belatedly in your life, have learned that you have a serious problem with drug abuse and you need to continue with treatment").

Nevertheless, the Court will typically resolve any factual disputes pressed by a defendant even if the issue has tangential relevance to the sentence. The reason is that the Court always asks a defendant whether the contents of the PSR are accurate (except the Court never asks a defendant who has gone to trial—as was the case here—whether the description of the offense is accurate). If a defendant informs the Court that a portion of the PSR is not accurate, the Court attempts to resolve the issue or indicates that it will not consider the disputed fact in determining the sentence. In addition, the PSR sometimes contains information unflattering to a defendant, and, if inaccurate, the Court typically accommodates a defendant's desire to clear his name.

13

## V.  SUMMARY

The premises of Mr. McCurdy's motion are incorrect.  First, as regards his argument about the contents of the PSR regarding an alleged bail violation, he is wrong.  The PSR does not say what he says it says.  Second, regarding the remaining factual issues, contrary to his assertions, the Court made the factual findings at the sentencing hearing that he claims it did not and should have made.  Third, he has long since waived his right to have this Court correct the contents of the PSR.  Fourth, the Court has no jurisdiction to hear his motion to correct the contents of the PSR.  Fifth, Mr. McCurdy is wrong about the obligation of the sentencing court to make findings on disputed facts.  Yet, it does not matter because the Court actually made the findings at the sentencing hearing.

## VI.  CONCLUSION

The Court DENIES Mark McCurdy's Motion to Append and Correct the Record (ECF No. 357).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2015