UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARK MCCURDY,                          )
                                       )
            Petitioner,                )
                                       )
      v.                               )        1:06-cr-00080-JAW
                                       )
                                       )
UNITED STATES OF AMERICA,              )
                                       )
            Respondent.                )

## ORDER ON SUCCESSIVE § 2255 PETITION

In compliance with an order from the Court of Appeals for the First Circuit

that allowed the petitioner to proceed with his successive § 2255 petition in light of

*Johnson v. United States*, 135 S. Ct. 2551 (2015), the Court follows district precedent

and rejects his claim that his prior convictions under Maine's burglary statute are

not violent felonies for purposes of the Armed Career Criminal Act (ACCA). However,

the Court accepts his claim that under *Johnson*, his prior convictions under Maine's

robbery statute are no longer proper ACCA predicates. With this ruling, the Court

concludes that the provisions of the ACCA should not be applied to the Defendant,

and the Court orders his resentencing.

## I.    Background[1]

### A.    Verdict, Sentence, and Direct Appeals

---

[1]      In setting forth the salient facts, the Court has significantly abridged Mr. McCurdy's litigation history, which is remarkably extensive, to reflect only those facts relevant to the motion currently before the Court.

On December 31, 2008, a federal jury convicted Mark McCurdy of being a felon in possession of a firearm. *Jury Verdict* (ECF No. 148). In anticipation of sentencing, the Probation Office listed the following predicate convictions for Armed Career Criminal Act (ACCA) status:

(1) Two counts of burglary on April 14, 1984 in Washington County Superior Court for the state of Maine, Docket No. CR-83-173; and

(2) Two counts of robbery on June 1, 1984 in Penobscot County Superior Court for the state of Maine, Docket No. CR-83-247.

Presentence Investigation Report ¶¶ 31–32. Had Mr. McCurdy not been convicted of other crimes, his criminal history category would have been IV due to his ACCA status under United States Sentencing Guideline § 4B1.4(c)(3); however, due to his other convictions, his criminal history category was calculated at V. *Id.* ¶¶ 38–39 (citing U.S.S.G. § 4B1.4(c)(1)). Because of his ACCA status, his offense level was fixed at 33. *Id.* ¶ 24. As Mr. McCurdy went to trial, he was not accorded acceptance of responsibility, and his Guideline sentence range was 210 to 262 months. *Id.* ¶ 59. On July 20, 2009, the Court sentenced Mr. McCurdy to 210 months of incarceration— at the low end of the guideline range—three years of supervised release, and a $100 special assessment. *Minute Entry* (ECF No. 191); *Tr. of Proceedings*, *Sentencing Proceedings* (ECF No. 208); *J.* (ECF No. 195).

On July 31, 2010, Mr. McCurdy appealed to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 197). On November 16, 2010, the First Circuit affirmed, *United States v. McCurdy*, No. 09-2101 (1st Cir. Nov. 16, 2010), and on

March 21, 2011, the Supreme Court denied Mr. McCurdy's petition for a writ of certiorari. *McCurdy v. United States*, 562 U.S. 1301 (2011) (mem.).

## B. First and Second Habeas Petitions

On August 4, 2011, Mr. McCurdy filed his first § 2255 petition. *Mot. Under § 2255 to Vacate, Set Aside, or Correct Sent. by a Person in Fed. Custody* (ECF No. 240). In that petition, Mr. McCurdy raised a number of issues, including allegations of ineffective assistance of counsel and prosecutorial misconduct. On September 27, 2013, the Court denied the petition. *Order on Def.'s First and Second Mots. for Leave to File Suppl. Pleadings and on Def.'s Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sent.* (ECF No. 305). Mr. McCurdy appealed that decision to the First Circuit Court of Appeals. *Notice of Appeal* (ECF No. 307). On June 4, 2014, the First Circuit denied his request for a certificate of appealability and terminated his appeal. *J.* (ECF No. 314).

On July 6, 2015, Mr. McCurdy filed his second § 2255 petition, alleging that the Government misstated facts in its brief to the Court of Appeals and that the Government and the Court blocked Mr. McCurdy's repeated attempts to secure the source of the misinformation. *Mot. to Vacate, Set Aside, or Correct a Sent. by a Person in Fed. Custody (28 U.S.C. § 2255)* (ECF No. 351). On July 28, 2015, the Magistrate Judge issued a recommended decision in which he recommended that this Court dismiss without prejudice Mr. McCurdy's July 6, 2015 motion, dismiss or deny all other pending motions, and deny a certificate of appealability. *Recommended Decision on 28 U.S.C. § 2255 Mot., Mot. for Relief from J., Mot. for Findings of Fact,*

*Mot. for Counsel and Disc. Mots.* (ECF No. 352). Mr. McCurdy objected to the recommended decision on August 28, 2015. *Pet'r's Objs. to Magistrate's Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 356). On March 24, 2016, this Court affirmed the recommended decision, dismissed without prejudice Mr. McCurdy's July 6, 2015 motion, denied and dismissed the remaining pending motions, and denied any certificate of appealability. *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 366). On April 28, 2016, Mr. McCurdy appealed this Court's March 24, 2016 order. *Notice of Appeal* (ECF No. 369). On October 11, 2016, the First Circuit Court of Appeals denied Mr. McCurdy's request for a certificate of appealability, his motion for appointment of counsel, and his motion for leave to file a successive motion. *J.* (ECF No. 393). On December 5, 2016, the Court of Appeals' mandate was filed in this Court. *Mandate* (ECF No. 394).

## C. Application to File Successive § 2255 Motion and Successive § 2255 Motion to Vacate Sentence

On November 25, 2015, Mr. McCurdy filed an application for leave to file a successive motion to vacate his sentence on the ground that his prior Maine burglary conviction no longer qualified as a violent felony under either the enumerated or residual clauses of the ACCA in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*). *App. for Leave to File a Second or Successive Mot. to Vacate, Set Aside, or Correct Sent. 28 U.S.C. § 2255 by a Prisoner in Fed. Custody* (ECF No. 378) (*Leave App.*). On June 21, 2016, the Court of Appeals for the First Circuit granted Mr. McCurdy's application seeking leave to file a second or successive § 2255 motion on the ground that Mr. McCurdy had made a prima facie showing that his challenge,

pursuant to *Johnson II*, to his armed-career-criminal designation legitimately relied upon a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *J.* at 1 (quoting 28 U.S.C. § 2255(h)(2)) (ECF No. 376). The First Circuit transferred Mr. McCurdy's leave application materials to this Court with instructions to file them as a § 2255 motion. *Id.*[2]

On June 27, 2016, the Magistrate Judge appointed David R. Beneman, the Federal Defender for the District of Maine, to represent Mr. McCurdy in his motion, *Order Appointing Counsel* (ECF No. 382), and ordered the Government to answer Mr. McCurdy's motion. *Order to Answer* (ECF No. 383). The Government answered Mr. McCurdy's motion on September 7, 2016. *Mot. for Summ. Dismissal of Mot. to Vacate, Set Aside, or Correct Sent. Pursuant to 28 U.S.C. § 2255* (ECF NO. 391) (*Gov't's Opp'n*). On October 3, 2016, Mr. McCurdy filed a reply. *Def.'s Reply to Gov't's Opp'n to Mot. to Correct Sent. Under 28 U.S.C. § 2255* (ECF No. 392) (*Def.'s Reply*).

## II. THE POSITIONS OF THE PARTIES

### A. Mark McCurdy's § 2255 Motion

In his November 25, 2015 leave application—which the Court construes as a § 2255 motion in accordance with the First Circuit's instructions—Mr. McCurdy

---

[2] On June 27, 2016, Mr. McCurdy additionally filed a formal § 2255 motion, raising the same issues that he previously raised in his leave application to the First Circuit. *See Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sent. by a Person in Fed. Custody* (ECF No. 380). In accordance with the First Circuit's instructions, however, the Court regards Mr. McCurdy's November 25, 2015 leave application as the operative § 2255 motion.

contests the validity of the ACCA enhancement following *Johnson II*. A memorandum accompanying his leave application explains:

> The Supreme Court decision in [*Johnson II*] rendered the State of Maine offense of Class C Burglary (17-A M.R.S.A. § 401(1)(A)) not a violent felony for purpose of a sentence enhancement under either the enumerated clause or the residual clause of the [ACCA] because it lacked an essential element required for generic burglary.

*Leave App.* at 8.

### B. The Government's Response

In its September 7, 2016 opposition, the Government first argues that because Mr. McCurdy's criminal record included two Maine convictions for a "generic burglary," he properly qualified for ACCA status under *United States v. Duquette*, 778 F.3d 314, 317–19 (1st Cir. 2015). *Gov't's Opp'n* at 6. The Government notes that in *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court defined "generic burglary" for purposes of the ACCA to be "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 8 (quoting *Taylor*, 495 U.S. at 599). The Government turns to the First Circuit's 2015 *Duquette* decision in which the First Circuit wrote that the Maine burglary statute, 17-A M.R.S. § 401(1), "contains all the elements of 'generic burglary'" that the Supreme Court identified in *Taylor*. *Id.* at 9 (quoting *Duquette*, 778 F.3d at 318). Even though the Sentencing Guideline defined "crime of violence" to include only burglary of a dwelling, the Government states that the First Circuit concluded that "the term 'burglary' as used in the ACCA [is] broad enough to include both residential and non-

residential offenses." *Id.* (quoting *Duquette*, 778 F.3d at 318 (quoting *United States v. Giggey*, 551 F.3d 27, 35–36 (1st Cir. 2008) (en banc)). The Government maintains that *Duquette* is still good law and that this Court is bound to apply it until it is overruled by the First Circuit Court of Appeals. *Id.* at 10.

The Government distinguishes the United States Supreme Court case of *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016), from Mr. McCurdy's case. *Id.* at 11. The Government observes that in *Mathis*, the Government had conceded the Iowa burglary statute covered a broader range of conduct than "generic burglary" does. *Id.* (citing *Mathis*. 136 S. Ct. at 2248–49). The Iowa burglary statute reached "any building, structure, *[or]* **land, water, or air** *vehicle*." *Id.* (quoting *Mathis*, at 2248–49 (quoting Iowa Code § 702.12 (2013)) (emphasis in original). The Government notes that the Maine statute defines burglary as entering or surreptitiously remaining in a "structure" knowing the person is not licensed or privileged to do so, "with the intent to commit a crime therein." *Id.* (quoting 17-A M.R.S. § 401). Referring to Maine's statutory definitions of "structure" and "dwelling place," the Government argues that "Maine's definition of burglary is…more consistent than is Iowa's with the American Law Institute's Model Penal Code § 22.1 (1980), on which the Supreme Court based its definition of 'generic burglary.'" *Id.*

Neither is the Government impressed with the contention that Maine's definition of "structure" to include a vehicle or conveyance being used as a dwelling makes a difference. Pointing to a Fifth Circuit case, *United States v. Herrold*, 813 F.3d 595 (5th Cir. 2016), the Government argues that the Fifth Circuit recently

rejected "a remarkably similar claim." *Id.* at 13. Furthermore, the Government points out that Maine courts have interpreted this statutory language to include only places where people live, such as house trailers, mobile homes, and inhabitable camp trailers. *Id.* at 13–14 (citing *State v. Albert*, 426 A.2d 1370, 1374 (Me. 1981), *State v. Lerman*, 302 A.2d 572, 576–77 (Me. 1993), *State v. Cookson*, 293 A.2d 780, 784–85 (Me. 1973), *State v. Cook*, 1 A.3d 333, 337 (Me. 2010)).

After counting the two burglaries as ACCA predicates, the Government notes that the ACCA requires at least three predicate convictions, and it contends that either of Mr. McCurdy's two robberies qualifies as an ACCA predicate. *Id.* at 14–16. The Government maintains that these convictions qualify under the ACCA's "force clause." *Id.* Further, referring to the *Shepard*-approved[3] documents it attached to its opposition, the Government contends that Mr. McCurdy was charged in both robberies with being armed with a dangerous weapon, which it argues would satisfy the "force clause" even if the offense was overbroad and did not otherwise qualify as a "violent felony." *Id.* at 16–17 (citing *United States v. Whindleton*, 797 F.3d 105, 114 (1st Cir. 2015)).

The Government concludes that Mr. McCurdy had four ACCA predicate convictions and was properly deemed subject to the ACCA enhancements under the statute and guidelines. *Id.* at 18.

## C. Mark McCurdy's Reply

---

[3]     *Shepard v. United States*, 544 U.S. 13 (2005).

In his reply, Mr. McCurdy argues that *Duquette* is not controlling, that his Maine burglary convictions are not generic, and that they fail to satisfy the enumerated clause of the ACCA. *Def.'s Reply* at 1. After *Johnson II*, Mr. McCurdy says the Maine burglary convictions are no longer ACCA predicates because the Maine statute includes some vehicles and conveyances as structures. *Id.*

Mr. McCurdy first addresses the law of the circuit doctrine. *Id.* at 17. He contends that the United States Supreme Court decision in *Mathis* overrules *Duquette*. *Id.* at 18–19. He also disagrees with the Government's reliance on *Herrold*, noting that the Acting Solicitor General has agreed that Mr. Herrold's petition for writ of certiorari should be granted and the Fifth Circuit's judgment vacated in light of *Mathis*. *Id.* at 19. Moreover, Mr. McCurdy argues that the First Circuit's declaration in *Duquette* that Maine's burglary statute corresponds to "generic" burglary is merely dictum. *Id.* at 20. Mr. McCurdy explains that Mr. Duquette's appellate counsel conceded that the Maine burglary statute was consistent with a generic burglary. Mr. McCurdy points out that Mr. Duquette's appellate counsel instead chose to "inexplicably" argue that the Career Offender guideline, U.S.S.G. § 4B1.1, did not apply to him, even though he was sentenced under the ACCA. *Id.* at 17, 20. Because the First Circuit did not need to reach the question of whether Maine's burglary statute corresponded to the generic burglary to decide Mr. Duquette's appeal, Mr. McCurdy argues that *Duquette* is not binding precedent on this Court's interpretation of the ACCA. *Id.* at 20–21.

Mr. McCurdy also addresses caselaw in other jurisdictions and cites cases where courts have, in his view, deemed statutes similar to Maine's burglary statute as non-generic. *Id.* at 12–17.

Finally, Mr. McCurdy disputes whether his robberies are properly deemed ACCA predicates. *Id.* at 22–25. He points out that in *Jackson v. United States*, No. 2:06-cr-94-GZS (D. Me. June 6, 2016), Judge Singal of this District reviewed Maine's robbery statute and concluded that robbery involving the use of "physical force"—as Maine courts interpret the term—was not sufficient to satisfy the violent force requirement of *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*). *Id.* at 22–23. Mr. McCurdy explains that his own robbery conviction merely involved the "threatened" use of physical force—as opposed to the actual use of physical force in *Jackson*—and therefore, his conviction likewise should not qualify as a ACCA predicate. *Id.* at 23.

Additionally, Mr. McCurdy disputes the contention that it makes a difference that he was charged with being armed with a dangerous weapon when he committed these robberies. *Id.* at 23 ("The mere addition of a dangerous weapon does not change the result"). He concludes that the robberies "no longer qualify." *Id.* at 25.

Mr. McCurdy concludes that neither his prior burglary convictions nor his prior robbery convictions are predicates to ACCA status and that the Court "should vacate his ACCA-based sentence and re-sentence him." *Id.* at 25.

## III. DISCUSSION

### A. The Maine Burglary Convictions as ACCA Predicates

In assessing Mr. McCurdy's arguments about his prior burglary convictions, the Court does not start with a blank slate. Other judges of this District have issued three opinions concluding that "recent First Circuit precedent establishes that Maine burglary convictions are 'violent felonies' pursuant to ACCA's enumerated clause."[4] *Dimott v. United States*, Nos. 2:06-cr-26-GZS, 2:16-cv-347-GZS, 2016 U.S. Dist. LEXIS 142354, at *8 (D. Me. Oct. 14, 2016); *see Collamore v. United States*, Nos. 2:16-cv-259-GZS, 2:10-cr-158-GZS, 2016 U.S. Dist. LEXIS 148757, at *6 (Oct. 27, 2016); *United States v. Casey*, Nos. 2:11-cr-216-DBH, 2:16-cv-346-DBH, 2016 U.S. Dist. LEXIS 153085 (D. Me. Nov. 3, 2016).

In *Dimott*, the district judge concluded (1) that a defendant whose sentence was enhanced under the ACCA's enumerated clause may not claim that *Johnson II* and *Welch v. United States*, 136 S. Ct. 1257 (2016) announced a retroactively-applicable, newly-recognized right, (2) that *Duquette* is the "'law of the circuit' and this Court is bound by it unless and until the First Circuit decides to revisit *Duquette*," (3) there is "no basis for concluding that *Mathis* should be read as overruling *Duquette*," and (4) that *Mathis* "does not present the 'extremely rare circumstance[]' where *Duquette* would no longer be binding precedent on this Court." *Id.* at *5–9. Even though it was "understandable" that Mr. Dimott would claim that Maine statutory definition of "structure" "categorically reach[es] a broader range of places

---

[4]     The Tenth Circuit Court of Appeals recently cited *Dimott* for its conclusion that *Mathis* did not announce a new substantive rule retroactively applicable to cases on collateral review because the Supreme Court made it clear it was not breaking new ground in *Mathis*. *See United States v. Taylor*, No. 16-6223, 2016 U.S. App. LEXIS 21701, at *12 (10th Cir. Dec. 6, 2016); *see also Raines v. Fox*, No. CIV-16-1036-R, 2016 U.S. Dist. LEXIS 148195, at *2, n.1 (W.D. Okla. Oct. 26, 2016).

than generic burglary," the district judge concluded that *Duquette* "currently provides a binding answer to that question within the First Circuit." *Id.* at *10–11. In resolving Mr. McCurdy's contentions about his burglary convictions, this Court "follow[s] *Dimott* and appl[ies] *Duquette*." *Casey*, 2016 U.S. Dist. LEXIS 153085, at *15.

This conclusion does not imply that Mr. McCurdy's arguments about his burglary convictions are not substantial. As another judge in this District notes, *Mathis* "casts significant doubt on the continued vitality of *Duquette*." *Id.* at *16. In *Casey*, the Court observed that "Maine's burglary statute, which encompasses camping vehicles, trailers, sleeper trains, and airplanes and boats with sleeping accommodations, seems to have a broader locational element than generic burglary." *Id.* But, as in *Dimott*, *Collamore*, and *Casey*, this Court must "leave that conclusion to the First Circuit." *Id.* at *16. The Court follows the lead of the district judges in this District by issuing a certificate of appealability on these questions. *Dimott*, 2016 U.S. Dist. LEXIS 142354, at *11–12; *Collamore*, 2016 U.S. Dist. LEXIS 148757, at *6–7; *Casey*, 2016 U.S. Dist. 153085, at *16; *see Casey*, Nos. 2:11-cr-216-DBH, *Order Issuing Certificate of Appealability* at 1 (ECF No. 78).

## B. The Robbery Convictions as ACCA Predicates

Mr. McCurdy has another arrow in his quiver. To qualify as an armed career criminal, the ACCA requires a defendant to have "three previous convictions…for a violent felony." 18 U.S.C. § 924(e)(1). Assuming that the two prior burglary convictions count under the enumerated clause of the ACCA, Mr. McCurdy must still

have one additional "violent felony" in order to qualify for the ACCA enhancement. In order to reach ACCA status, therefore, one or both of Mr. McCurdy's prior robberies must count as a predicate ACCA felony.

As with the burglary convictions, this Court does not start with a blank slate regarding Mr. McCurdy's arguments about his prior robbery convictions. In *Collamore*, the district judge observed that he had recently held "that Maine robbery is not categorically an ACCA predicate offense pursuant to the force clause." *Collamore*, 2016 U.S. Dist. LEXIS 148757, at *6, n.2 (citing *Jackson v. United States*, No. 2:16-cv-187-GZS, 2016 U.S. Dist. LEXIS 73052, at *3 (D. Me. June 6, 2016)). The Court turns to *Jackson*.

In *Jackson*, a defendant had been previously convicted of violating Maine's robbery statute, 17-A M.R.S. § 651. *Id.* at *1–3. The district judge concluded that section 651 was "divisible" under *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013). *Id.* at *3. As a result, the district judge reviewed the *Shepard*-approved documents in accordance with the modified categorical approach, focusing on the "force" language in the *Jackson* indictment. *Id.* at *3–4. The indictment read "DAVID S. JACKSON…did commit or attempt to commit theft by obtaining or exercising unauthorized control over the property of [the victim]…and *at the time of said theft, Defendant did use force upon [victim]*." *Id.* (emphasis and alterations in opinion). The district judge determined that the language contained in the indictment corresponded to 17-A M.R.S. § 651(1)(C), which penalizes a person who "uses physical force on another…" *Id.* at *4.

To qualify as a "violent felony" under *Johnson I*, the defendant must have used "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. However, the district judge in *Jackson* noted that the Maine Supreme Judicial Court ruled that "*any* physical force" would be sufficient to satisfy the force requirement in the Maine robbery statute. *Id.* at *5 (quoting *Raymond v. State*, 467 A.2d 161, 164-65 (Me. 1983)). Consequently, the district judge resolved that he "could not conclude that the physical force Jackson used upon his victim to extract the money, which was the focus of the theft element, was necessarily force capable of causing physical pain or injury to the victim." *Id.* at *6–7. He therefore declined to conclude that Mr. Jackson's Maine robbery conviction was an ACCA-qualifying conviction as a violent felony under the "force clause." *Id.* at *7.

Here, the Court accepts the premise that section 651, the Maine robbery statute, is divisible. At the time of Mr. McCurdy's convictions, section 651 read:

1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:

   A. He recklessly inflicts bodily injury on another;

   B. He threatens to use force against any person present with intent:

      1. to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or

      2. to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;

C. He uses physical force on another with the intent enumerated in paragraph B, subparagraphs (1) or (2);

D. He intentionally inflicts or attempts to inflict bodily injury on another; or

E. He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.

2. Robbery as defined in subsection 1, paragraphs A and B, is a Class B crime. Robbery as defined in subsection 1, paragraphs C, D, and E is a Class A Crime.

17-A M.R.S. § 651 (1975).

The Government supplied the indictment in state court in 1983, charging Mr. McCurdy with two counts of robbery—one an attempted robbery and the other a successful robbery.[5] The state court indictment reads:

AND THE GRAND JURY CHARGES: COUNT I

That on or about the 10th day of March, 1983, in the County of Penobscot, State of Maine, MARK MCCURDY did attempt to commit theft, to wit, did attempt to obtain or exercise unauthorized control over the property of the [victim], to wit, drugs, with the intent to deprive said [victim] thereof, and at the time of his actions, he threatened to use force against any person present, to wit, [the victim], with the intent to compel the person in control of the property, to wit, [the victim], to give it up or to engage in other conduct which aids in the taking or carrying away of the property and he or an accomplice to his knowledge was armed with a dangerous weapon, to wit, a firearm, in the course of the robbery.

AND THE GRAND JURY FURTHER CHARGES: COUNT II

That on or about the 10th day of March, 1983, in the County of Penobscot, State of Maine, MARK MCCURDY did commit theft, to wit,

---

[5]    The state court indictment is one of the limited documents that the Supreme Court held that a court may review under the modified categorical approach. *Shepard*, 544 U.S. at 26 ("We hold that enquiry under the ACCA to determine whether a plea to a burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document…or to some comparable judicial record of this information").

did attempt to obtain or exercise unauthorized control over the property of the [victim], to wit, drugs, with the intent to deprive said [victim] thereof, and at the time of his actions, he threatened to use force against any person present, to wit, [the victim], with the intent to compel the person in control of the property, to wit, [the victim], to give it up or to engage in other conduct which aids in the taking or carrying away of the property and he or an accomplice to his knowledge was armed with a dangerous weapon, to wit, a firearm, in the course of the robbery.

*Gov't's Opp'n*, Attach. 3, *Indictment for Violation of 17-A M.R.S.A. Section 651 ROBBERY (Class A Crime)* (ECF No. 391) (*Indictment*).[6]  Comparing the Maine robbery statute to the indictment, Mr. McCurdy was charged with violating 17-A M.R.S. § 651(1)(B)(2): "A person is guilty of robbery if the person commits theft or attempts to commit theft and at the time of the person's actions: (B) the actor threatens to use force against any person present with the intent (2) to compel the person in control of the property to give it up or to engage in other conduct that aids in the taking or carrying away of the property."  If this were all that the State alleged, the *Jackson* case would be persuasive authority for finding that neither robbery was a violent felony within the meaning of the ACCA.

However, one obvious difference between *Jackson* and Mr. McCurdy's case is that Mr. McCurdy was also charged with being armed with a dangerous weapon under section 651(1)(E).[7]  Accordingly, the Court must perform a slightly different

---

[6]    The Government also attached the state court judgment.  *Gov't's Opp'n*, Attach. 4, *Judgment and Commitment* at 1 (ECF No. 391).  Other than confirming that Mr. McCurdy pleaded guilty to both robbery charges and was convicted of Class A robberies, the judgment does not illuminate the issue before the Court.  *Id.*

[7]    The indictment does not reveal whether Mr. McCurdy or his accomplice was the one armed with the dangerous weapon.  *Indictment* at 1.  However, the indictment alleges that "he or an accomplice to his knowledge was armed with a dangerous weapon, to wit, a firearm, in the course of the robbery."  *Id.*  Neither the Government nor Mr. McCurdy has suggested that it would make a difference to the Court's analysis whether he actually carried the firearm or whether he robbed the pharmacies with an accomplice who he knew was carrying a firearm.

analysis to determine whether being armed with a dangerous weapon—as opposed to using or threatening to use physical force—is sufficient to constitute a violent felony under the ACCA.

To prove that a defendant (or his accomplice) was "armed with a dangerous weapon" under section 651(1)(E), the Maine Supreme Judicial Court held that the state must demonstrate that the defendant was in "actual possession of a firearm" within the definition of Maine law. *State v. Zaccadelli*, 472 A.2d 928, 932 (Me. 1984); *see* 17-A M.R.S. § 2(9)(B)(1) ("'Armed with a dangerous weapon' means in actual possession, regardless of whether the possession is visible or concealed, of: (1) a firearm"). Maine law defined "firearm" as "any weapon, whether loaded or unloaded, which is designed to expel a projectile by the action of an explosive." 17-A M.R.S. § 2(12-A). In *Zaccadelli*, the defendant argued that even though he (or his accomplice) possessed a pistol that was used in the robbery, the State had failed to prove that the pistol was operable as required by the definition of "firearm." 472 A.2d at 931. The Maine Law Court rejected the argument, quoting the definition of "armed with a dangerous weapon" in 17-A M.R.S. § 2(9):

> For purposes of this subsection, a thing presented in a covered or open manner as a dangerous weapon shall be presumed to be a dangerous weapon.

*Id.* at 932; *see State v. Flash*, 418 A.2d 158, 162 (Me. 1980) (approving a jury instruction that stated "If a thing is presented as a weapon in an open or covered manner, you are permitted…to infer that the thing was a dangerous weapon and conclude…that it was a dangerous weapon").

The Court turns to whether, as explained by the Maine Supreme Judicial Court, the Maine crime of robbery while armed with a dangerous weapon transforms the crime of robbery into a violent felony under the ACCA. The answer is not easy. As the First Circuit just commented in *United States v. Tavares*, No. 14-2319, 2016 U.S. App. LEXIS 21491 (1st Cir. Dec. 1, 2016), this type of analysis can lead a court "down several rabbit holes" and into a "Rube Goldberg jurisprudence of abstractions piled on top of one another in a manner that renders doubtful anyone's confidence in predicting what will pop out at the end." *Id.* at *41–42 (addressing "crime of violence" under the career criminal enhancement in U.S.S.G. § 4B1.2). But, in *Tavares*' words, "[w]hat pops out matters a great deal." *Id.*

To add to a degree of irreducible vagueness, Maine decisional law has not addressed all of the critical questions presented here. For guidance, the Court turns to jurisprudence arising out of the commonwealth of Massachusetts' armed robbery statute. The Massachusetts offense of armed robbery has two elements: (1) that the defendant commits a robbery (2) while in possession of a weapon. *Compare* 17-A M.R.S. § 651(1)(e), *with* MASS. GEN. LAWS ch. 265,[8] § 17; *King v. MacEachern*, 665

---

[8]    Chapter 265 of the Massachusetts General Laws reads:

    Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years; provided, however, that any person who commits any offence described herein while masked or disguised or while having his features artificially distorted shall, for the first offence be sentenced to imprisonment for not less than five years and for any subsequent offence for not less than ten years. Whoever commits any offense described herein while armed with a firearm, shotgun, rifle, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than five years. Any person who commits a subsequent offense while armed with a firearm, shotgun, rifle, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than 15 years.

F.3d 247, 253 (1st Cir. 2011) (citing *Commonwealth v. Tevlin*, 433 Mass. 305, 741 N.E.2d 827, 833 (2001)). For purposes of this analysis, the robbery portion of the Massachusetts statute has been interpreted consistently with the robbery portion of the Maine statute in that both laws treat a de minimis use of force, such as snatching a purse, as fitting within the definition of robbery. *See Raymond*, 467 A.2d at 164 (interpreting § 651(1)(B)); *Commonwealth v. Jones*, 362 Mass. 83, 283 N.E.2d 840, 845 (1972). Neither Maine nor Massachusetts' statute would meet the "violent force" requisite under the ACCA's force clause. *Jackson*, 2016 U.S. Dist. LEXIS 73052, at *6; *United States v. Dubose*, criminal action no. 04-10291-RGS, civil action no. 16-11214-RGS, 2016 U.S. Dist. LEXIS 174994, at *5 (D. Mass. Dec. 19, 2016).

Whether the firearm possession is sufficient to bring Mr. McCurdy's case within the ACCA is more difficult. Although the Maine and Massachusetts statutory language is not identical, it is similar. 17-A M.R.S. § 651(1)(e) ("The actor is armed with a dangerous weapon"); MASS. GEN. LAWS ch. 265, § 17 ("Whoever, being armed with a dangerous weapon"). Interpreting the Massachusetts language, the Massachusetts courts have concluded that "a dangerous weapon need play no part in the robbery itself, nor need the victim even be aware of its presence." *Dubose*, 2016 U.S. Dist. LEXIS 174994, at *5 (citing *King*, 665 F.3d at 253 & n.7). Indeed, in Massachusetts, "a robbery may be committed even if the victim is not placed in fear" and there is no requirement that the robber actually "harbored a willingness to inflict bodily harm or otherwise use violent force against a victim." *Id.* at 7. "All that is required is a showing of *de minimis* force, which is insufficient to clear the threshold

established in *Johnson I*." *Id.* In reaching the conclusion that a conviction for an armed robbery in Massachusetts does not meet the violent force requisite in the ACCA, the district judge concurred with *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016), a Ninth Circuit decision interpreting the Massachusetts armed robbery statute. *Id.* at 4, 7; *see also United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016).

The decisional law in Maine is not as clear on this issue as in Massachusetts, but the language of the Maine statute is consistent with the *Dubose* and *Parnell* analyses. The Maine statute elevates a robbery from a Class B crime to a Class A crime if the robber "is armed" with a dangerous weapon. 17-A M.R.S. § 651(1)(E). Maine courts have not gone so far as to say it does not matter if the victim even knows that the robber has the weapon. But by its terms, the Maine statute does not require that the robber actively use the weapon to commit the robbery in order to violate section 651(1)(E), only that the robber possess it "in the course of the robbery." *Id.* Without more, the possession of a firearm during a robbery does not therefore transform the robbery to one where the robber used "violent force" under the ACCA's force clause.

The Government analogizes the Maine armed robbery statute to *United States v. Whindleton*, 797 F.3d 105 (1st Cir. 2015), where the First Circuit addressed the Massachusetts crime of assault with a dangerous weapon and concluded that it was properly a predicate ACCA offense. But as the *Whindleton* Court explained, the Massachusetts assault with a dangerous weapon statute imposes "the additional

element that the assault must be accomplished 'by means of a dangerous weapon.'" *Id.* at 114 (quoting MASS. GEN. LAWS ch. 265, § 15B(b)). In *Dubose*, the federal district court in Massachusetts noted that the absence of a requirement that the weapon plays a part in the Massachusetts armed robbery statute "makes armed robbery unlike other offenses in Massachusetts, such as an assault with a dangerous weapon, where the presence of the weapon 'imports the "violent force" required by *Johnson* into' an otherwise overbroad statute." *Dubose*, 2016 U.S. Dist. LEXIS 174994, at *5 (quoting *Whindleton*, 797 F.3d at 114).

Nor is the Court bound by its own decision in *United States v. Mulkern*, 15-cr-54-JAW. The main issue in *Mulkern* was a complicated question about whether the defendant's prior drug conviction was a qualifying offense under the ACCA and whether the prior burglary and robbery were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1); *United States v. Mulkern*, 1:15-cr-00054-JAW-1, *Tr. of Proceedings, Sentencing Proceedings* 8:7–24:11 (ECF No. 61) (*Mulkern Sentencing Tr.*). Whether Mr. Mulkern's robbery conviction was a qualifying offense was summarily briefed, *see Mulkern, Gov't Mem. in Aid of Sentencing* (ECF No. 46), *Def.'s Sentencing Mem.* at 6–8 (ECF No. 48), *Gov't's Reply to the Def.'s Sentencing Mem.* (ECF No. 49), argued, and resolved. *Mulkern Sentencing Tr.* 24:17–25:4.[9] But more significantly, Mr. Mulkern's robbery conviction stemmed from a different section of 651 than Mr. McCurdy was convicted of violating. Mr. Mulkern was

---

[9] The Court agrees with Mr. McCurdy's diplomatic statement that "[m]uch has changed" since 2004 when the Court decided *United States v. Bishop*, 350 F. Supp. 2d 117 (D. Me. 2004). *See Def.'s Reply* at 24.

charged and convicted of violating 17-A M.R.S. § 651(1)(A), which required that the Government prove the defendant "recklessly inflicts bodily injury on another." On its face, the infliction of bodily injury would appear to meet the *Johnson I* requirement of "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

In short, the Court concludes that the armed robberies with which Mark McCurdy has been charged and convicted do not meet the violent force requirement of the ACCA as explained by the Supreme Court in *Johnson I* and *Johnson II*.

## IV.    CONCLUSION

With the elimination of the two armed robbery convictions, Mark McCurdy has two predicate ACCA violent felonies; the ACCA requires three. 18 U.S.C. § 924(e)(1) ("three previous convictions"). This means the ACCA does not apply to him, and instead of a fifteen-year mandatory statutory minimum and an enhanced sentencing guideline range, Mark McCurdy faces a ten-year maximum. 18 U.S.C. § 924(a)(2). The Court therefore GRANTS Mark McCurdy's motion under 28 U.S.C. § 2255 (ECF No. 378) and DISMISSES as moot his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentencing by a Person in Federal Custody (ECF No. 380). The Court will set the matter ahead for a conference of counsel to discuss re-sentencing.[10]

---

[10]    This decision will require a recalculation of Mr. McCurdy's guideline sentence range. If, as recalculated, Mr. McCurdy has either over-served or is close to over-serving his newly-calculated guideline sentence range, the Court assumes that counsel will quickly inform the Court so that it can expedite Mr. McCurdy's resentencing.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of January, 2017